## IN THE UNITED STATE DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELIZABETH KUPSTAS-BADURINA individually and JOHN PARRSIEN, H/W, Plaintiffs,**<br><br>**v.**<br><br>**BLUE MOUNTAIN RESORT AND THE TUTHILL CORPORATION (d/b/a BLUE MOUNTAIN RESORT), JOHN DOES 1 – 10 (said names being fictitious, real names unknown) and ABC COMPANIES 1 - 10 (said names being fictitious, real names unknown), JOHN DOES 11-20 (said names being fictitious, real names unknown) and ABC COMPANIES 11 - 20 (said names being fictitious, real names unknown),  and JOHN DOES 21 - 50 (said names being fictitious, real names unknown) and ABC COMPANIES 21 - 50 (said names being fictitious, real names unknown),**<br>**Defendants.** | **CIVIL ACTION**<br><br>**NO.**<br><br><br>**JURY TRIAL DEMANED** |

## PLAINTIFFS' CIVIL ACTION COMPLAINT

**AND NOW COME**, Plaintiffs, Elizabeth M. Kupstas-Badurina and John Parrsien, husband and wife, citizens of the United States of America, State of New Jersey, County of Gloucester therein, by and through their attorneys van der Veen, Hartshorn & Levin, Michael T. van der Veen, Esquire, hereby lodge the Plaintiffs' Civil Action Complaint and action for damages and recovery for personal and related injuries against the Defendants and others for whose liability imposing conduct they are responsible in damages at law and in support thereof avers the following:

## THE PARTIES

1.  Plaintiff Elizabeth M.  Kupstas-Badurina is an adult citizen of the United States of America, State of New Jersey, County of Gloucester residing therein at 351 Hurffville CrossKeys Rd., Turnersville, NJ 08012.

2.  Plaintiff John Parrsien is an adult citizen of the United States of America, State of New Jersey, County of Gloucester residing therein at 351 Hurffville CrossKeys Rd., Turnersville, NJ 08012.

3.  Defendant Blue Mountain Resort is a Pennsylvania Corporation and/or other duly authorized legal entity and/or duly licensed entity and/or fictitious entity organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania and the United States of America and/or the name under which some other real and/or fictitious entity operates with principal places of business variously located at 55 Laurel View Dr., Lehighton, Pa 18235 and 1660 Blue Mountain Drive Palmerton, Pa., 18071and an ecommerce platform on the world wide web targeting consumers from the Eastern District of Pennsylvania and at all times material hereto acted in its own right and by and through its administrators, board, officers, employees, parent, successor and/or subsidiary entities, servants, agents, authorized representatives, contractors, designees and/or other persons acting within the scope of their authority on behalf of the said Defendant such that any liability imposing act premised upon any cognizable theory by any of the foregoing persons/entities imposes liability upon Defendant, Blue Mountain Resort under and by virtue of the laws of the Commonwealth of Pennsylvania.

4.  Further, Defendant Blue Mountain Resort upon information and belief and/or in the alternative was the owner, operator, manager and/or entity hired to operate the Blue Mountain

Resort located at 1660 Blue Mountain Drive, Palmerton, Pa. 18071 on March 20, 2021 and an ecommerce platform on the world wide web targeting consumers from the Eastern District of Pennsylvania individually and/or together with some or all of the other defendants.

5.   Defendant mThe Tuthill Corporation d/b/a Blue Mountain Resort is a Pennsylvania Corporation and/or other duly authorized legal entity organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania and the United States of America with principal places of business variously located at 55 Laurel View Dr., Lehighton, Pa 18235 and 1660 Blue Mountain Drive Palmerton, Pa., 18071 and an ecommerce platform on the world wide web targeting consumers from the Eastern District of Pennsylvania and at all times material hereto acted by, through its administrators, board, officers, employees, parent, successor and/or subsidiary entities, servants, agents, authorized representatives, contractors, designees and/or other persons acting within the scope of their authority on behalf of the said Defendant such that any liability imposing act premised upon any cognizable theory by any of the foregoing persons/entities imposes liability upon Defendant Blue Mountain Resort under and by virtue of the laws of the Commonwealth of Pennsylvania.

6.   Further, Defendant The Tuthill Corporation d/b/a Blue Mountain Resort upon information and belief and/or in the alternative was the owner, operator, manager and/or entity hired to operate the Blue Mountain Resort located at 1660 Blue Mountain Drive, Palmerton, Pa. 18071 on March 20, 2021 individually and/or together with some or all of the other defendants.

7.   Defendant JOHN DOES 1 – 10 (said names being fictitious, real names unknown) and ABC COMPANIES 1 - 10 (said names being fictitious, real names unknown) are Pennsylvania Corporation and/or other duly authorized legal entities organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania and the United States of America or elsewhere

with principal places of business variously located at 55 Laurel View Dr., Lehighton, Pa 18235
and 1660 Blue Mountain Drive Palmerton, Pa., 18071 and an ecommerce platform on the world
wide web targeting consumers from the Eastern District of Pennsylvania and at all times material
hereto acted by, through its administrators, board, officers, employees, parent, successor and/or
subsidiary entities, servants, agents, authorized representatives, contractors, designees and/or other
persons acting within the scope of their authority on behalf of the said Defendant such that any
liability imposing act premised upon any cognizable theory by any of the foregoing
persons/entities imposes liability upon Defendant, Blue Mountain Resort under and by virtue of
the laws of the Commonwealth of Pennsylvania.

8.   Further, Defendant JOHN DOES 1 - 10 (said names being fictitious, real names unknown)
and ABC COMPANIES 1 - 10 (said names being fictitious, real names unknown) upon
information and belief and/or in the alternative was the owner, operator, manager and/or entity
hired to operate the Blue Mountain Resort located at 1660 Blue Mountain Drive, Palmerton, Pa.
18071 on March 20, 2021 individually and/or together with some or all of the other defendants.

9.   Defendant JOHN DOES 11-20 (said names being fictitious, real names unknown) and
ABC COMPANIES 11 - 20 (said names being fictitious, real names unknown) are non-resident
and/or Pennsylvania Corporations and/or other duly authorized legal entities organized and
existing under and by virtue of the laws of the Commonwealth of Pennsylvania and the United
States of America or elsewhere with principal places of business variously located at 55 Laurel
View Dr., Lehighton, Pa 18235 and 1660 Blue Mountain Drive Palmerton, Pa., 18071 and at all
times material hereto acted by, through its administrators, board, officers, employees, parent,
successor and/or subsidiary entities, servants, agents, authorized representatives, contractors,
designees and/or other persons acting within the scope of their authority on behalf of the said

Defendant such that any liability imposing act premised upon any cognizable theory by any of the foregoing persons/entities imposes liability upon said Defendants under and by virtue of the laws of the Commonwealth of Pennsylvania.

10.      Further, Defendant JOHN DOES 11 - 20 (said names being fictitious, real names unknown) and ABC COMPANIES 11 - 20 (said names being fictitious, real names unknown) upon information and belief and/or in the alternative was the owner, operator, manager and/or entity hired to operate the Blue Mountain Resort located at 1660 Blue Mountain Drive, Palmerton, Pa. 18071 on March 20, 2021 individually and/or together with some or all of the other defendants.

11.      Defendant JOHN DOES 21 - 50 (said names being fictitious, real names unknown) and ABC COMPANIES 21 - 50 (said names being fictitious, real names unknown) are non-resident and/or Pennsylvania Corporations and/or other duly authorized legal entities organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania and the United States of America or elsewhere with principal places of business variously located at 55 Laurel View Dr., Lehighton, Pa 18235 and 1660 Blue Mountain Drive Palmerton, Pa., 18071 and an ecommerce platform on the world wide web targeting consumers from the Eastern District of Pennsylvania and at all times material hereto acted by, through its administrators, board, officers, employees, parent, successor and/or subsidiary entities, servants, agents, authorized representatives, contractors, designees and/or other persons acting within the scope of their authority on behalf of the said Defendant such that any liability imposing act premised upon any cognizable theory by any of the foregoing persons/entities imposes liability upon said Defendants under and by virtue of the laws of the Commonwealth of Pennsylvania.

12.      Further, Defendant JOHN DOES 21 - 50 (said names being fictitious, real names unknown) and ABC COMPANIES 21 - 50 (said names being fictitious, real names unknown)

upon information and belief and/or in the alternative was the owner, operator, manager and/or entity hired to operate the Blue Mountain Resort located at 1660 Blue Mountain Drive, Palmerton, Pa. 18071 on March 20, 2021 individually and/or together with some or all of the other defendants.

13.     The Defendants each individually jointly and severally as the owners, management, staff and personnel operating the Blue Mountain Resort on March 20, 2021 were responsible, liable for and charged with the safety, wellbeing, duty to make their premises safe for and protection from injury of the Plaintiff, Elizabeth M. Kupstas-Badurina, as a business invitee and paid patron skiing on their resort trails. Further, the Defendants were responsible and charged with monitoring, supervising and managing their facilities, operations and other patrons to prevent the injuries, damages and losses the Plaintiff sustained at that time.

## JURISDICTION STATEMENT

14.     The Jurisdiction of this Court is based upon Title 28 U.S.C., Sec. 1332, et seq. commonly known as Diversity of Citizenship Jurisdiction. At all relevant times herein, the Defendant Blue Mountain Resort, The Tuthill Corporation d/b/a Blue Mountain Resort, JOHN DOES 1 – 10 (said names being fictitious, real names unknown) and ABC COMPANIES 1 - 10 (said names being fictitious, real names unknown), JOHN DOES 11-20 (said names being fictitious, real names unknown) and ABC COMPANIES 11 - 20 (said names being fictitious, real names unknown), JOHN DOES 21 - 50 (said names being fictitious, real names unknown) and ABC COMPANIES 21 - 50 (said names being fictitious, real names unknown) are/were variously Pennsylvania companies and/or duly authorized legal entities and/or non-resident duly authorized persons/entities subject to Pennsylvania long-arm jurisdiction with a principal place of business in the Commonwealth of Pennsylvania variously located at Blue Mountain Resort 1660 Blue Mountain Drive Palmerton, Pa., 18071 and/or other locations throughout the Commonwealth. The

Defendants also operated an ecommerce platform on the world wide web accessible through the internet specifically targeting consumers and persons in the Eastern District of Pennsylvania such that the activities of the Defendants affect a significant portion of the persons and consumers within the District.

15.     In addition, the amount in controversy in this action exceeds $75,000 exclusive of interests and costs and thus venue is in the Eastern District of Pennsylvania where in this action is filed is proper.

16.     Furthermore, this Court has *in personam* jurisdiction over Defendants Blue Mountain Resort, The Tuthill Corporation (d/b/a BLUE MOUNTAIN RESORT) advertises, sells season passes and markets their facilities, activities, skiing and snowboarding trails, services and/or products and otherwise regularly conducts business within the Eastern District of Pennsylvania and/or because it knowingly or intentionally conducts business within the Eastern District of Pennsylvania by reasonably anticipating and agreeing that persons, consumers and business invitees, such as the Plaintiffs, and other consumers within the District would engage in commercial activities on their web portal, make purchases and buy season passes as the Plaintiffs so purchased their season passes over the internet as other similarly situated business invitees so purchased passes and season passes from within the Eastern District for their skiing and snowboarding facilities, activities, trails, services and/or products all the while specifically and expressly relying that Defendants facilities, snowboarding and skiing activities, facilities, trails, services and products would be made safe for their protection from injuries, damages and losses such as the injuries, damages and losses the Plaintiffs herein so sustained as a result of the negligence, gross negligence and recklessness of the Defendants all of which routinely occurred in the District.

17.     General Jurisdiction is based upon the Defendants' continuous and systematic contacts with Pennsylvania. Specific Jurisdiction is appropriate. Plaintiff's personal injuries occurred in Pennsylvania. Any non-resident Defendant, in fact, routinely directed its activities in Pennsylvania and throughout the Eastern District by forming or affiliating with a business entity in Pennsylvania and by managing and/or operating the Pennsylvania base ski/snowboarding resort at issue in this case that was the cause of the Plaintiffs' injuries, damages and losses as well as to other similarly situated consumers and business invitees throughout the Eastern District.

18.     The Plaintiffs' causes of action and theories of recovery, injuries, damages and losses arise out of actionable and cognizable occurrences precipitated and foreseeably related to the Defendants forum-related activities.

## OPERATIVE FACTS

19.     On March 20, 2021, the Plaintiffs Elizabeth M. Kupstas-Badurina and John Parssien, husband and wife, were business invitees and rightfully on the premises, grounds, facilities, resort and trails of the Defendants at the Blue Mountain Resort in Palmerton, Pennsylvania. The Plaintiffs had previously purchased a season pass through the Defendants' web portal for the winter activities resort.

20.     Among other things, the Defendants hold themselves out as a winter resort for business-invitees such as the Plaintiffs to engage in, among other things, skiing on their trails and slopes. The Defendants also permitted and did not restrict snowboarding on their trails and slopes on March 20, 2021.

21.     On March 20, 2021, the Plaintiff Elizabeth Kupstas-Badurina was rightfully present at the Defendant, Blue Mountain Resort, and at that time she was safely skiing in a controlled

manner on, upon information and belief, at the Blue Mountain Resort in Palmerton, PA pursuant to the season pass she had purchased through the Defendants' web portal.

22.     The Defendants' engage in the predatory and highly prejudicial practice, widely known to be detrimental to consumers and business invitees such as the Plaintiffs, of issuing a purported release with geographical venue provisions along with an "agreement not to sue" that purports to extend to the children and other members of the purchaser's family and maybe extended or step family of the purchaser. The release along with the language purporting to abolish the right of the Plaintiffs to sue are legally unenforceable. The Defendants' said release and agreement not to sue legally lack merit.

23.     Further, the terms of the Defendants' release and "agreement not to sue" are so patently defective on its face that it purports by its express terms, to strip the Plaintiffs and business invitees and similarly situated consumers and patrons of rights against the Defendants even if the Defendants engage in conduct that is "manifestly against public policy" which would presumably include things such as criminality(which is against public policy) and human trafficking(human trafficking is against public policy) and domestic abuse (against public policy) and violence (against public policy) and an entire spectrum of conduct for which the laws of the Commonwealth of Pennsylvania and the United States and societal norms (gay bashing, religious persecution and racial prejudice against public policy) provide legal protection, redress in the courts, cognizable rights and vindication at law. The Defendants' release and agreement not to sue document is futile and so legally infirm as to be facially void.

24.     At that time and at that place Plaintiff all the while in control of her descent, was properly and safely skiing on, upon information and belief, the trail/slope, that the Defendants have designated as the "Falls Trail".

25.     The "Falls Trail" permits snowboarding and snowboarders. The Defendants do not restrict snowboarding on the "Falls Trail" and snowboarders intermix and intermingle, cross and encounter skiers on the "Falls Trail".

26.     Permitting both skiers and snowboarders on the same trail/slope is especially and exquisitely dangerous and creates an environment that is ultra-hazardous to skiers as snowboarding requires the snowboarder to descend the trail/slope in a skewed anatomical position and because of the manner in which the snowboard must be manipulated and ridden in order to control direction and speed.

27.     The Defendants, and each individually, jointly and severally, should have but did not recognize this risk, danger and hazard and special risk, special hazard and increased danger and taken appropriate steps to protect the Plaintiff, Elizabeth M. Kupstas-Badurina, from speeding, unsafe and out-of-control snowboarders who would foreseeably be unable to slow and control their speed and direction to avoid colliding with skiers, such as the Plaintiff even if able to look ahead and observe skiers in their path during a trail/slope run.

28.     The Defendants failed to affix and apply sufficient warning signage throughout the resort to continually notify and remind patrons generally and the Plaintiff specifically of this special risk, hazard and danger.

29.     Further, at all times material hereto, the Defendants failed to place but should have placed sufficiently bright and orange fencing declaring, directing and indicating both in illustration and wording that snowboarders and patrons "slow down" on the Falls Trail and elsewhere about their resort.

30.     At that time and at that place, the Defendants each individually, jointly and severally, failed to place or have any signage depicting declaring and directing or otherwise describing or speaking to the danger, heightened danger, special caution and special risk of permitting both snowboarders and skiers to utilize the Falls Trail simultaneously as such is associated with extraordinary hazard.

31.     As a result, the conditions created and permitted to exist on the Defendants' Falls Trail on March 20, 2021 were hazardous, especially hazardous, dangerous and extremely dangerous so as to present a certain risk of injury and serious injury to the Plaintiff from violent collision with a snowboarder, all of which would have been unknown to the Plaintiff, but which was known the Defendants, should have been known to the Defendants and which the Defendants should have remediated in the exercise of due care for the protection from injury and safety of the Plaintiff.

32.     The Defendants' consciously disregarded the risk of injury to the Plaintiff despite being legally required and duty-bound to so make their premises and trails and slopes safe for the Plaintiff.

33.     The Plaintiffs did not assume the risk of the Defendants' conscious disregard, gross negligence and recklessness in regard to their safe, health and wellbeing on March 20, 2021.

34.     As a result of Defendants' liability imposing conduct, negligence, gross negligence, willfulness and wantonness and reckless indifference,  Plaintiff suffered permanent crippling and debilitating injuries, which continue to cause her pain in various parts of her body, fear for her past, present and future health, safety and well-being, loss use of her upper extremity, physical impairment, deformity and disability impacting her at times in rendering for herself even the most personal and intimate self-care to meet her daily needs. Additionally, Plaintiff has sustained

overuse, accelerated deterioration and pain in non-affected anatomy. She has and continues to suffer constant pain in her shoulder and through-out her body and difficulties finding a regular position of comfort. She has and will into the future be compelled to seek care to maintain her physical and emotional stability and well-being. She is and has been under the physical strain and physiologic pressure and emotional distress with attendant pain and stress, anxiety and apprehension. The Plaintiff's physical decline is accelerated. She has in the past and foreseeably into the future lost mobility and independence impacting every material aspect of her life. She has lost the enjoyment of life's pleasures as well as a loss of her ability to perform daily routines, pursuits and goals with modifications in aspects of her life, vocations and avocations.

35.     As a further result of Defendants' liability imposing conduct, negligence, gross negligence, willfulness and wantonness and reckless indifference, the Plaintiff has been required to incur expenses for necessary and reasonable medical treatment for her aforesaid injuries. Plaintiff will require continuing and foreseeable future medical care for her injuries indefinitely into the future for the rest of her life however long that may be.

36.     As a result of the Defendants' aforesaid liability imposing conduct, negligence, gross negligence, recklessness, willfulness and wantonness and reckless indifference, the Plaintiff has suffered and will continue to suffer severe physical pain, disability, mental anguish, embarrassment, humiliation, and other incidental costs, all of which are permanent in nature.

### COUNT I – NEGLIGENCE
### PLAINTIFF ELIZABETH M. KUPSTAS-BADURINA v. ALL DEFENDANTS

37.     Plaintiffs repeat and adopt each and every allegation set forth herein above as if the same were fully set forth herein at length.

38.     At all times material hereto, the liability imposing conduct, negligence, carelessness, willfulness and wantonness of the Defendants individually, jointly and severally by and through and together with their duly authorized agents, servants, workmen and employees then working within the scope of their agency and/or employment, includes, but is not limited to:

(a) Failing to control out of control snowboarders and recklessly failing to have a separated designated snowboarding area, run and specially designated trail to ensure the Plaintiff was protected and safe from the snowboarder who failed to yield the right of way and violently collided with her.  Further, the Defendants failed to manage their trails and slopes in a manner to prevent injury due to another invitee;

(b) Failing to have sufficient personnel to ensure safety of skiers;

(c) Failing to have sufficient safety personnel to observe and control snowboarders from colliding with skiers on the various trails and the falls trail on March 20, 2021 to prevent the Plaintiff from being struck by a snowboarder;

(d) Failing to have sufficient signage and space to prevent snowboarders from colliding with skiers on March 20, 2021 on the various trails and specifically the falls trail at the time the Plaintiff was struck and injured by an out of control snowboarder;

(e) Failing to have sufficiently safe trail space to safely accommodate skiers and snowboarders to ensure the Plaintiff was not violently struck by a snowboarder at or near the Falls Trail on March 20, 2021;

(f) Failing have policies, procedures, protocols and personnel to control the speed of snowboarders in proximity to skiers on the various trails and specifically the Falls Trail on March 20, 2021;

(g) Failing to enforce policies, procedures, protocols and personnel to control the speed of

snowboarders in proximity to skiers on the various trails and specifically the falls trail on March 20, 2021;

(h) Failing to have policies, procedures, protocols and personnel to ensure that snowboarders slowed and stopped on the side of the Falls Trail run on March 20, 2021 to avoid violent collision with the Plaintiff;

(i) Failing to enforce policies, procedures, protocols and have sufficient personnel to so enforce the policies, protocols and procedures to prevent violent collision due to snowboarders failing to slow and stop for skiers on March 20, 2021 on the various trails including the Falls Trail;

(j) Failing to have sufficient space and guides for snowboarders to remain safely distant from violently colliding with skiers on the various trails and specifically the Falls Trail on March 20, 2021;

(k) Failing to have sufficient personnel, barriers and controls to monitor and prevent violent collision of snowboarders with skiers at trail crossings and mergers on March 20, 2021;

(l) Failing to have policies, procedures and protocols and supervisory personnel to ensure that snowboarders were able and actually performing controlled falls to avoid violent collision upon encountering skiers on the various trails and Falls Trail on March 20, 2021;

(m) Failing to enforce policies, procedures and protocols and sufficiently train personnel in the methods of enforcing the same to ensure snowboarders were able and actually performing controlled falls to avoid violent collision with skiers on the various trails and Falls Trail on March 20, 2021;

(n) Failing to have policies, procedures and protocols to ensure snowboarders were competent to perform controlled falls and slowing their speed before permitting runs on

the falls trail in proximity to skiers on March 20, 2021;

(o) Failing to enforce policies, procedures and protocols and have sufficient number of trained personnel to monitor and intervene to protect the Plaintiff from a snowboarder who neither slowed nor performed a controlled fall at any time before violently colliding into her on March 20, 2021;

(p) Failing to have policies, procedures and protocols to ensure that the Plaintiff was not violently struck on March 20, 2021 on the falls trail by a risk-taking snowboarder;

(q) Failing to enforce policies, procedures and protocols on March 20, 2021 to ensure that the Plaintiff was not violently struck by a risk-taking snowboarder on the Falls Trail;

(r) Failing to have sufficient personnel to monitor and supervise the Falls Trail from an excessive risk-taking out of control snowboarder who violently collided into the Plaintiff on March 20, 2021 on the falls trail;

(s) Failing to have policies, procedures and protocols to ensure that snowboarders could see, observe and view skiers such as the Plaintiff on the Falls Trail before violently colliding into them on March 20, 2021;

(t) Failing to enforce policies, procedures and protocols with sufficiently trained and experienced personnel to ensure that the Plaintiff would be protected and safe from being struck by a snowboarder who could neither observe nor view or see or who was not keeping look-out ahead to avoid violently colliding with the Plaintiff on March 20, 2021;

(u) Failing to closely manage the resort, mountain, trails, skiers and snowboarders to prevent the violent collisions the Plaintiff suffered on March 20, 2021;

(v) Failing to establish, enforce and maintain safety protocols to minimize and prevent loss of control by snowboarders and the prevent the violent collision the Plaintiff suffered at

the hands of Defendants on March 20, 2021;

(w) Failing to establish, enforce and maintain safety protocols with respect to trail guards and rail guards for snowboarders to protect skiers and prevent the violent collisions the Plaintiff suffered at the hands of Defendants on March 20, 2021;

(x) Failing to limit ticket sales on March 20, 2021;

(y) Failing to manage the safety of large crowds on the on the trails and Falls Trail on March 20, 2021;

(z) Failing to manage the safety of large crowds and protect the Plaintiff from being violently struck by a snowboarder on March 20, 2021 by requiring 24 hour reservation;

(aa)     Failing to monitor, enforce, recognize and protect the Plaintiff from being struck by a snowboarder on March 20, 2021 who was taking risks, flaunting safety and who should have not been permitted in proximity to the Plaintiff;

(bb)     Failing to take photographs of and remove the snowboarder from the trails prior to violently colliding with the Plaintiff on March 20, 2021;

(cc)     Recklessly failing to have a guest reporting system to help guests identify and report safety risks to protect the Plaintiff and similarly situated business invitees on the Falls Trail such as the snowboarder who collided with the Plaintiff on March 20, 2021;

(dd)     Failing to timely observe the unsafe conditions on the slope and intervene for the protection of the Plaintiff at any time before the Plaintiff was violently struck and injured on March 20, 2021;

(ee)     Failing to have adequate signage;

(ff)     Failing to have sufficient, properly visible and illuminated signage;

(gg)     Failing to monitor trails and tracks for deteriorated conditions such that a

snowboarder would be unable to avoid collision with the Plaintiff on the Falls Trail on March 20, 2021;

(hh)     Failing to monitor and intervene to protect the Plaintiff from the violent collision at the hands of a snowboarder on March 20, 2021 who encountered terrain that was too steep and/or rough to perform a safe controlled fall;

(ii) Failing to have safety protocols that required the snowboarder who violently struck the Plaintiff on March 20, 2021 to yield the right of way to the Plaintiff who was skiing ahead of the snowboarder;

(jj) Failing to enforce or otherwise have personnel available to recognize the situation and intervene to protect the Plaintiff from the violent collision at the hands of a snowboarder March 20, 2021 who was not yielding the right of way to the Plaintiff ahead; and

(kk)     Failing to have sufficient bright colored "SLOW" and fore warning signs.

39.     As a direct and proximate result of the aforesaid liability imposing conduct, negligence, willfulness and wantonness of the Defendants, Plaintiff was caused to suffer severe and permanent disabling injuries to her body, including but not limited to, fractures, multiple comminuted fractures, debility and various other ills and injuries together with great mental anguish and physical pain and suffering, from which she suffers and suffered, and will continue to suffer for an indefinite time into the future, all or some of which injuries are permanent in nature.

40.     As a direct and proximate result of the aforesaid liability imposing conduct, negligence, willfulness and wantonness of the Defendants, Plaintiff has been and may continue to be prevented from attending to her usual duties, activities and avocations and has suffered and will continue to suffer into the future a loss of earnings and earning capacity to her great detriment and loss.

41.     As a direct and proximate result of the aforesaid liability imposing conduct, negligence, willfulness and wantonness of the Defendants, Plaintiff has been compelled, in an attempt to affect a cure of the aforesaid injuries, to expend various sums of monet for medicine and medical attention, and will be required to expend such sums of money for an indefinite period of time into the future.

42.     As a direct and proximate result of the aforesaid liability imposing conduct, negligence, willfulness and wantonness of the Defendants, Plaintiff has suffered disfigurement and loss of life's pleasures, embarrassment and emotional distress.

43.     The above-mentioned injuries to Plaintiff were caused solely and exclusively by reason of the liability imposing conduct, negligence, willfulness and wantonness of the Defendants individually, jointly and severally by and through and together with their duly authorized agents, servants, workmen and employees then working within the scope of their agency and/or employment, as described more fully hereinabove and was due in no manner whatsoever to any act or failure to act on the part of the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants, individually and jointly and severally, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) and in excess of the limits of compulsory arbitration of this Court as well as damages for personal injury, compensatory damages, delay damages, interest and allowable costs of suit as well as any all damages the Honorable Court deems just.

### COUNT II – GROSS NEGLIGENCE/RECKLESSNESS
### PLAINTIFF ELIZABETH M. KUPSTAS-BADURINA v. ALL DEFENDANTS

44.     Plaintiffs repeat and adopt each and every allegation set forth herein above as if the same were fully set forth herein at length.

45.      At all times material hereto, the liability imposing conduct, gross negligence, willfulness, wantonness and recklessness of the Defendants individually, jointly and severally by and through and together with their duly authorized agents, servants, workmen and employees then working within the scope of their agency and/or employment, includes, but is not limited to:

(ll) Recklessly failing to control out of control snowboarders and recklessly failing to have a separated designated snowboarding area, run and specially designated trail to ensure the Plaintiff was protected and safe from the snowboarder who failed to yield the right of way and violently collided with her;

(mm)      Recklessly failing to have sufficient personnel to ensure safety of skiers;

(nn)      Recklessly failing to have sufficient safety personnel to observe and control snowboarders from colliding with skiers on the various trails and the Falls Trail on March 20, 2021 to prevent the Plaintiff from being struck by a snowboarder;

(oo)      Recklessly failing to have sufficient signage and space to prevent snowboarders from colliding with skiers on March 20, 2021 on the various trails and specifically the Falls Trail at the time the Plaintiff was struck and injured by an out of control snowboarder;

(pp)      Recklessly failing to have sufficiently safe trail space to safely accommodate skiers and snowboarders to ensure the Plaintiff was not violently struck by a snowboarder at or near the Falls Trail on March 20, 2021;

(qq)      Recklessly failing have policies, procedures, protocols and personnel to control the speed of snowboarders in proximity to skiers on the various trails and specifically the Falls Trail on March 20, 2021;

(rr) Recklessly failing to enforce policies, procedures, protocols and personnel to control the

speed of snowboarders in proximity to skiers on the various trails and specifically the Falls Trail on March 20, 2021;

(ss) Recklessly failing to have policies, procedures, protocols and personnel to ensure that snowboarders slowed and stopped on the side of the Falls Trail run on March 20, 2021 to avoid violent collision with the Plaintiff;

(tt) Recklessly failing to enforce policies, procedures, protocols and have sufficient personnel to so enforce the policies, protocols and procedures to prevent violent collision due to snowboarders failing to slow and stop for skiers on March 20, 2021on the various trails including the Falls Trail;

(uu)    Recklessly failing to have sufficient space and guides for snowboarders to remain safely distant from violently colliding with skiers on the various trails and specifically the Falls Trail on March 20, 2021;

(vv)    Recklessly failing to have sufficient personnel, barriers and controls to monitor and prevent violent collision of snowboarders with skiers at trail crossings and mergers on March 20, 2021;

(ww)    Recklessly failing to have policies, procedures and protocols and supervisory personnel to ensure that snowboarders were able and actually performing controlled falls to avoid violent collision upon encountering skiers on the various trails and Falls Trail on March 20, 2021;

(xx)    Recklessly failing to enforce policies, procedures and protocols and sufficiently train personnel in the methods of enforcing the same to ensure snowboarders were able and actually performing controlled falls to avoid violent collision with skiers on the various trails and Falls Trail on March 20, 2021;

(yy)   Recklessly failing to have policies, procedures and protocols to ensure snowboarders were competent to perform controlled falls and slowing their speed before permitting runs on the Falls Trail in proximity to skiers on March 20, 2021;

(zz)   Recklessly failing to enforce policies, procedures and protocols and have sufficient number of trained personnel to monitor and intervene to protect the Plaintiff from a snowboarder who neither slowed nor performed a controlled fall at any time before violently colliding into her on March 20, 2021;

(aaa)   Recklessly failing to have policies, procedures and protocols to ensure that the Plaintiff was not violently struck on March 20, 2021 on the falls trail by a risk-taking snowboarder;

(bbb)   Recklessly failing to enforce policies, procedures and protocols on March 20, 2021 to ensure that the Plaintiff was not violently struck by a risk-taking snowboarder on the Falls Trail;

(ccc)   Recklessly failing to have sufficient personnel to monitor and supervise the Falls Trail from an excessive risk-taking out of control snowboarder who violently collided into the Plaintiff on March 20, 2021 on the Falls Trail;

(ddd)   Recklessly failing to have policies, procedures and protocols to ensure that snowboarders could see, observe and view skiers such as the Plaintiff on the Falls Trail before violently colliding into them on March 20, 2021;

(eee)   Recklessly failing to enforce policies, procedures and protocols with sufficiently trained and experienced personnel to ensure that the Plaintiff would be protected and safe from being struck by a snowboarder who could neither observe nor view or see or who was not keeping look-out ahead to avoid violently colliding with the Plaintiff on March

20, 2021;

(fff)    Recklessly failing to closely manage the resort, mountain, trails, skiers and snowboarders to prevent the violent collisions the Plaintiff suffered on March 20, 2021;

(ggg)    Recklessly failing to establish, enforce and maintain safety protocols to minimize and prevent loss of control by snowboarders and the prevent the violent collision the Plaintiff suffered at the hands of a snowboarder on March 20, 2021;

(hhh)    Recklessly failing to establish, enforce and maintain safety protocols with respect to trail guards and rail guards for snowboarders to protect skiers and prevent the violent collision the Plaintiff suffered at the hands of a snowboarder on March 20, 2021;

(iii) Recklessly failing to limit ticket sales on March 20, 2021;

(jjj) Recklessly failing to manage the safety of large crowds on the on the trails and Falls Trail on March 20, 2021;

(kkk)    Recklessly failing to manage the safety of large crowds and protect the Plaintiff from being violently struck by a snowboarder on March 20, 2021 by requiring 24 hour reservation;

(lll) Recklessly failing to monitor, enforce, recognize and protect the Plaintiff from being struck by a snowboarder on March 20, 2021 who was taking risks, flaunting safety and who should have not been permitted in proximity to the Plaintiff;

(mmm)    Recklessly failing to have a sufficient closed circuit monitoring system to detect unsafe and dangerous invitees and conditions and/or not enough staff and personnel to monitor such a system;

(nnn)    Recklessly failing to have a guest reporting system to help guests identify and report safety risks to protect the Plaintiff and similarly situated business invitees on the

Falls Trail such as the snowboarder who collided with the Plaintiff on March 20, 2021;

(ooo)    Recklessly Failing to timely observe the unsafe conditions on the slope and intervene for the protection of the Plaintiff at any time before the Plaintiff was violently struck and injured on March 20, 2021;

(ppp)    Recklessly failing to have adequate signage;

(qqq)    Recklessly failing to have sufficient properly visible and illuminated signage;

(rrr)    RecklesslyfFailing to monitor trails and tracks for deteriorated conditions such that a snowboarder would be unable to avoid collision with the Plaintiff on the Falls trail on March 20, 2021;

(sss)    Recklessly failing to monitor and intervene to protect the Plaintiff from the violent collision at the hands of a snowboarder on March 20, 2021 who encountered terrain that was too steep and/or rough to perform a safe controlled fall;

(ttt)Recklessly failing to have safety protocols that required the snowboarder who violently struck the Plaintiff on March 20, 2021 to yield the right of way to the Plaintiff who was skiing ahead of the snowboarder;

(uuu)    Recklessly failing to enforce or otherwise have personnel available to recognize the situation and intervene to protect the Plaintiff from the violent collision at the hands of a snowboarder March 20, 2021 who was not yielding the right of way to the Plaintiff ahead; and

(vvv)    Recklessly failing to have sufficient bright colored "SLOW" and fore warning signs.

46.    As a direct and proximate result of the aforesaid liability imposing conduct, gross negligence, willfulness, wantonness and recklessness of the Defendants, Plaintiff was caused to

suffer severe and permanent disabling injuries to her body, including but not limited to, fractures, multiple comminuted fractures, debility and various other ills and injuries together with great mental anguish and physical pain and suffering, from which she suffers has suffered, and will continue to suffer for an indefinite time into the future, all or some of which injuries are permanent in nature.

47.    As a direct and proximate result of the aforesaid liability imposing conduct, gross negligence, willfulness, wantonness and recklessness of the Defendants, Plaintiff has been and may continue to be prevented from attending to her usual duties, activities and avocations and has suffered and will continue to suffer into the future a loss of earnings and earning capacity to her great detriment and loss.

48.    As a direct and proximate result of the aforesaid liability imposing conduct, gross negligence, willfulness, wantonness and recklessness of the Defendants, Plaintiff has been compelled, in an attempt to affect a cure of the aforesaid injuries, to expend various sums of money for medicine and medical attention and will be required to expend such sums of money for an indefinite period of time into the future.

49.    As a direct and proximate result of the aforesaid liability imposing conduct, gross negligence, willfulness, wantonness and recklessness of the Defendants, Plaintiff has suffered disfigurement and loss of life's pleasures, embarrassment and emotional distress.

50.    The above-mentioned injuries to Plaintiff were caused solely and exclusively by reason of the liability imposing conduct, gross negligence, willfulness, wantonness and recklessness of the Defendants individually, jointly and severally by and through and together with their duly authorized agents, servants, workmen and employees then working within the

scope of their agency and/or employment, as described more fully hereinabove and was due in no manner whatsoever to any act or failure to act on the part of the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants, individually and jointly and severally, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) and in excess of the limits of compulsory arbitration of this Court as well as damages for personal injury, compensatory damages, delay damages, interest and allowable costs of suit as well as any all damages the Honorable Court deems just.

### COUNT III – LOSS OF CONSORTIUM
### PLAINTIFF JOHN PARRSIEN v. ALL DEFENDANTS

51.     Plaintiffs repeat and adopt each and every allegation set forth herein above as if the same were fully set forth herein at length.

52.     As a result of the liability imposing conduct, negligence, gross negligence, recklessness, willful and wonton disregard of the Defendants, Blue Mountain Resort, The Tuthill Corporation (d/b/a BLUE MOUNTAIN RESORT), JOHN DOES 1 - 10 (said names being fictitious, real names unknown) and ABC COMPANIES 1 - 10 (said names being fictitious, real names unknown), JOHN DOES 11-20 (said names being fictitious, real names unknown) and ABC COMPANIES 11 - 20 (said names being fictitious, real names unknown), JOHN DOES 21 - 50 (said names being fictitious, real names unknown) and ABC COMPANIES 21 - 50 (said names being fictitious, real names unknown) either jointly, severally and/or combination, the Plaintiff, John Parrsien, has been deprived of the assistance, consortium, affection, support, companionship and society of his wife, Elizabeth M. Kupstas-Badurina, all of which has been to their great detriment and loss.

**WHEREFORE**, Plaintiff John Parrsien, claims past and future damages for loss of consortium and all lawful damages against the Defendants Blue Mountain Resort, The Tuthill Corporation (d/b/a BLUE MOUNTAIN RESORT), JOHN DOES 1 - 10 (said names being fictitious, real names unknown) and ABC COMPANIES 1 - 10 (said names being fictitious, real names unknown), JOHN DOES 11-20 (said names being fictitious, real names unknown) and ABC COMPANIES 11 - 20 (said names being fictitious, real names unknown), JOHN DOES 21 - 50 (said names being fictitious, real names unknown) and ABC COMPANIES 21 - 50 (said names being fictitious, real names unknown) in an amount in excess of ($75,000) and in excess of the arbitration limits of this court either jointly, severally or in combination together with interest, delay damages and costs of suit and any and all just damages and respectfully requests the Honorable Court enter judgment on the same in his favor.

### COUNT IV – PUNITIVE DAMAGES
### PLAINTIFFS v. ALL DEFENDANTS

53.     Plaintiffs repeat and adopt each and every allegation set forth herein above as if same were fully set forth herein at length.

54.     At the time and place set forth herein above the Defendants Blue Mountain Resort, The Tuthill Corporation (d/b/a BLUE MOUNTAIN RESORT), JOHN DOES 1 - 10 (said names being fictitious, real names unknown) and ABC COMPANIES 1 - 10 (said names being fictitious, real names unknown), JOHN DOES 11-20 (said names being fictitious, real names unknown) and ABC COMPANIES 11 - 20 (said names being fictitious, real names unknown), JOHN DOES 21 - 50 (said names being fictitious, real names unknown) and ABC COMPANIES 21 - 50 (said names being fictitious, real names unknown), failed to take the appropriate action to safeguard

plaintiff and/or persons similarly situated as plaintiff who were legally and lawfully on the subject property.

55.   As a direct and proximate result of their gross negligence and actions with a knowing, recklessness, willful and wanton disregard for the safety of plaintiff and persons similarly situated as Plaintiff, Defendants Blue Mountain Resort, The Tuthill Corporation (d/b/a BLUE MOUNTAIN RESORT), JOHN DOES 1 - 10 (said names being fictitious, real names unknown) and ABC COMPANIES 1 - 10 (said names being fictitious, real names unknown), JOHN DOES 11-20 (said names being fictitious, real names unknown) and ABC COMPANIES 11 - 20 (said names being fictitious, real names unknown),  JOHN DOES 21 - 50 (said names being fictitious, real names unknown) and ABC COMPANIES 21 - 50 (said names being fictitious, real names unknown) jointly, severally or in the alternative, as aforesaid, caused the Plaintiff Elizabeth M.  Kupstas-Badurina, to sustained serious and permanent injuries as well as other cognizable damages and losses.

**WHEREFORE**, Plaintiffs Elizabeth M.  Kupstas-Badurina and John Parrsien,  demands judgment against the Defendants Blue Mountain Resort, The Tuthill Corporation (d/b/a BLUE MOUNTAIN RESORT), JOHN DOES 1 - 10 (said names being fictitious, real names unknown) and ABC COMPANIES 1 - 10 (said names being fictitious, real names unknown), JOHN DOES 11-20 (said names being fictitious, real names unknown) and ABC COMPANIES 11 - 20 (said names being fictitious, real names unknown), JOHN DOES 21 - 50 (said names being fictitious, real names unknown) and ABC COMPANIES 21 - 50 (said names being fictitious, real names unknown) either jointly, severally or in the alternative for punitive damages together with interest and costs of suit.

## JURY DEMAND

Pursuant to the applicable Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury as to all issues.

## NOTICE OF DESIGNATION OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that pursuant to the Rules of the Court, Michael T. van der Veen, Esq. and David C. Devine, Esq. are hereby designated as trial counsel of the within matter.

Van Der Veen Hartshorn & Levin

BY:_____

Michael T. Van Der Veen, Esquire

# VERIFICATION

I, __Elizabeth Kupstas-Badurina_____, verify that I am the Plaintiff herein and that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

I further understand that this statement is subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

Signed: _____       Dated: __March 14, 2023_____